UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOWARD R. WILKOV, M.D. and WILKOV FAMILY
LIMITED PARTNERSHIP,

<em>Plaintiffs,</em>

-against-

CARLA ZIMBALIST, PAM CHANLA,
ENCINO VERDE DEVELOPMENT, LLC,
SCOTT AVENUE DEVELOPMENT, LLC, CPM
HOLDINGS, LLC, PMC INTERESTS, LLC, and
AMERIPRISE FINANCIAL, INC.,

<em>Defendants.</em>



CIV_____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Howard R. Wilkov, M.D. ("Dr. Wilkov") and the Wilkov Family

Limited Partnership (collectively, "Plaintiffs"), by their undersigned counsel, for their Complaint

against defendants Carla Zimbalist ("Zimbalist"), Pam Chanla ("Chanla"), Encino Verde

Development, LLC ("Encino Verde Development"), Scott Avenue Development, LLC ("Scott

Avenue Development"), CPM Holdings, LLC ("CPM Holdings"), and PMC Interests, LLC

("PMC Interests"), and Ameriprise Financial, Inc. ("Ameriprise"), hereby allege as follows:

### NATURE OF ACTION

1.    This action is one for damages arising out of securities fraud, common law

fraud, unjust enrichment and breach of contract.

2.    Defendants engaged in a criminal scheme to defraud investors, including

Plaintiffs, by promoting investments in certain limited liability companies which, they falsely

claimed, purchased, rehabilitated and sold in residential real estate located in and around Los

Angeles County, California (the "Los Angeles Properties"). This fraudulent scheme is the

subject of a related action in this Court (assigned to Judge Hellerstein) brought against these

same defendants by various other defrauded investors. *See Charney v. Zimbalist*, SDNY, 07 CV

6272(AKH).  Zimbalist and Chanla have also pled guilty to securities fraud charges  brought by
the Manhattan District Attorney's Office in connection with this scheme.

3.      The masterminds of this fraudulent scheme were Zimbalist and Chanla, who
(through non-party Jennifer Wilkov and other means) told Plaintiffs and other investors that their
investment would be used to complete the purchase, rehabilitation and sale of the Los Angeles
Properties and that when the process was complete, they would receive a share of the profits in
proportion to the amount they had invested.

4.      In fact, there were no purchases, rehabilitations or sales.  Rather, Zimbalist
and Chanla simply pocketed Plaintiffs' investment.

5.      In order to prevent Plaintiffs and other investors from discovering their
scheme, Zimbalist and Chanla generated and distributed false and/or misleading documents
which purported to disclose the costs of their investments, the expected rate of return and updates
regarding the progress made in selling the Los Angeles Properties.

6.      In furtherance of their scheme, Zimbalist and Chanla enlisted the services of
non-party Jennifer Wilkov a financial services advisor and "Registered Representative" at
American Express Financial Advisors ("AEFA"), the predecessor-in-interest to Defendant
Ameriprise.

7.      Ms. Wilkov is the daughter of Plaintiff Dr. Wilkov.  Dr. Wilkov is the
General Partner of Plaintiff Wilkov Family Limited Partnership. Dr. Wilkov and his partnership
were also the greatest victim of this fraud, having been falsely induced to invest over $1 million
in non-existent securities at the behest of Dr. Wilkov's daughter, who was manipulated by the
ring leaders – Zimbalist and Chanla.

8.      Plaintiffs were customers of AEFA.  Ms. Wilkov was their financial advisor.

9.    Ms. Wilkov acted in the scope of her duties as an employee or agent of AEFA by acting as a financial advisor to Plaintiffs and more particularly by recommending that they invest in the securities and properties at issue in this complaint.

10.    Thus, it was in her role as an employee of AEFA, and with AEFA's knowledge, that Ms. Wilkov induced her father to invest in the Los Angeles Properties both on his own behalf and on behalf of the Wilkov Family Limited Partnership.

11.    In fulfilling her role, and despite failing to exercise reasonable due diligence, Ms. Wilkov repeatedly assured her clients that the investments in California were sound.  And in fulfilling her role and, despite a complete lack of evidence, Ms. Wilkov made repeated representations regarding Zimbalist and Chanla's past performance, and Ms. Wilkov specifically assured her clients that she had conducted an investigation of Zimbalist and Chanla. Zimbalist, Chanla and Ms. Wilkov prepared documents purporting to disclose the costs of the investment, but which neglected to include the costs of several critical elements of any real estate purchase or the cost of the fees Ms. Wilkov was being paid.

12.    Ms. Wilkov advised and encouraged her clients with reassurances that the investments would return profits in excess of 100% and that Zimbalist and Chanla were legitimate, experienced, and reliable real estate developers, despite her lack of due diligence in ascertaining the bona fides of these investments.  In reality, the entire process was nothing more than an elaborate fraud in which Zimbalist and Chanla never purchased most of the properties, and the properties that were actually purchased were never rehabilitated and sold.

13.    In reliance upon the fraudulent statements of Zimbalist and Chanla, and the misrepresentations Ms. Wilkov was caused to make in her dual role as promoter of the investments and financial advisor to the Plaintiffs on behalf of AEFA, Plaintiffs invested more

than $1 million, all of which has been lost.

## PARTIES

### A.    Plaintiffs

14.    Plaintiff Dr. Wilkov is a physician.  He is a resident of Florida.

15.    Plaintiff Wilkov Family Limited Partnership is a Florida limited partnership.
Dr. Wilkov is its General Partner.

### B.    Defendants.

16.    At all times material herein, Zimbalist was, and currently is, a resident of
California.

17.    Upon information and belief, Zimbalist was a managing member of Encino
Verde Development, Scott Avenue Development, CPM Holdings and PMC Interests (the
"Investment LLC Defendants"), all of which entities are limited liability companies formed
under the laws of the State of California.

18.    At all times herein relevant, Zimbalist represented that these entities were
engaged in the purchase, rehabilitation, and resale of properties in and around Los Angeles
County, California, for profit.

19.    At all times material herein, Chanla was, and currently is, a resident of
California.

20.    Upon information and belief, Chanla was a managing member of each of the
Investment LLC Defendants.

21.    At all times herein relevant, Chanla represented that these entities were
engaged in the purchase, rehabilitation, and resale of properties in and around Los Angeles
County, California, for profit.

22.    At all times material herein, non-party Jennifer Wilkov was, and currently

is, a resident of New York.

23.    At all times material herein, non-party Jennifer Wilkov was a Certified Financial Planner and licensed securities broker.

24.    At all times relevant to this action prior to August 15, 2005, non-party Jennifer Wilkov was employed by AEFA as a financial advisor.

25.    AEFA was a financial advising corporation formed under the laws of the State of Delaware.

26.    Defendant Ameriprise was, and is, the successor-in-interest to AEFA.

27.    At all times material herein, the Defendant, Ameriprise is a financial advising corporation formed under the laws of the state of Delaware with its principal place of business in Minnesota.

## JURISDICTION AND VENUE

28.    The Court has subject matter jurisdiction over this case under 28 U.S.C. §1331, inasmuch as this case arise under the federal securities laws.

29.    This Court also has subject matter jurisdiction under 28 U.S.C. § 1332, inasmuch as there is complete diversity of citizenship between the plaintiffs and defendants, and the amount in controversy exceeds $75,000, excluding interest and attorney's fees.

30.    The Court has personal jurisdiction over Defendants because one or more defendants have conducted and continue to conduct business in New York, and have otherwise committed acts giving rise to personal jurisdiction over them in New York, within the meaning of N.Y. C.P.L.R. §§ 301 and 302(a).

31.    Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred here, within the meaning of 28 U.S.C. §1391(b)(2).

## THE FACTS

## I.    ZIMBALIST AND CHANLA'S FRAUDULENT SCHEME

32.    In the latter half of 2004, Jennifer Wilkov was introduced to Zimbalist and

Chanla by her brother, Jeffrey Wilkov, another of Zimbalist and Chanla's victims. Jeffrey

Wilkov had invested with Zimbalist and Chanla and, because their fraudulent scheme had not yet

come to light, he recommended them to his sister.

33.    Soon thereafter, Ms. Wilkov, acting as an agent and employee of AEFA and

within the scope of her employment, began recommending Zimbalist and Chanla's investments

to the AEFA clients for whom Ms. Wilkov served as a financial advisor.

34.    One of the AEFA clients to whom Ms. Wilkov recommended Zimbalist and

Chanla's investments was her father, Dr. Wilkov. Those solicitations were made to him both

individually and as General Partner of the Wilkov Family Limited Partnership. In fact, Dr.

Wilkov had been (through his daughter) a customer of AEFA for years. Jennifer's

recommending these investments was part of her responsibilities to her father and her other

customers as a Registered Representative of AEFA.

35.    Paragraph 2(m) of the 2005 Securities Broker/Dealer And Registered

Representative Professional Liability Insurance Policy issued to AEFA by the AMEX Assurance

Company for errors and omissions by AEFA Registered Representatives defines a Registered

Representative, such as Ms. Wilkov as "an individual who is registered [with the NASD] and

who for compensation engages in the business of rendering Professional Services on behalf of

the Broker/Dealer." In turn Paragraph 2(l) defines "Professional Services" rendered by an AEFA

Registered Representative as, among other things, advising and implementing the "purchase or

sale of securities," and "providing financial planning advice including" on other financial

"investments" and "retirement planning." This policy was issued to all AEFA Registered

Representatives.

36.     Ultimately, as described in more detail below, in September 2004, Dr. Wilkov paid Zimbalist and Chanla at least $100,000 to invest in two properties through the Zimbalist and Chanla-controlled entity, Encino Verde Development, LLC:  (1) 17065 Encino Verde Place, Encino, CA and (2) 17067 Encino Verde Place, Encino, CA.

37.     Further, between March and May 2005, the Wilkov Family Limited Partnership paid Zimbalist and Chanla at least $925,000 to invest in seven properties through the Zimbalist and Chanla-controlled entity, Scott Avenue Development, LLC:  (1) 247 East Mountain Avenue, Pasadena, CA, (2) 634 Forest Avenue, Pasadena, CA, (3) 607 N. Garfield Ave., Pasadena, CA, (4) 4855 Orion Avenue, Los Angeles, CA, (5) 1132 Stratford Avenue, Pasadena, CA, (6) 162 South Lotus Avenue, Pasadena, CA, and (7) 2646 Bronholly Drive, Los Angeles, CA.

38.     However, Zimbalist and Chanla did not invest Plaintiffs' funds in the properties in which paid Zimbalist and Chanla claimed to be investing, and rather Zimbalist and Chanla kept the money for themselves, paying Jennifer Wilkov a supposed finder's fee from bringing victims into their scheme.

**Encino Verde Development**

39.     In early September or late August 2004, Ms. Wilkov approached Dr. Wilkov about investing in Encino Verde Development, LLC ("Encino Verde Development"), which she claimed was going to purchase properties at 17065 Encino Verde Place, Encino, CA and 17067 Encino Verde Place, Encino, CA (the "Encino Verde Properties").

40.     On or about September 17, 2004, Dr. Wilkov wired $100,000 to CPM Holdings, LLC, which was, upon information and belief, the entity which Zimbalist and Chanla

used to receive funds to be used for the supposed investment in the Encino Verde Properties.

41.    In or around December 2004, Zimbalist and Chanla sent Dr. Wilkov membership certificates memorializing his investment in Encino Verde Development.

42.    In fact, Encino Verde Development never purchased or otherwise invested in the Encino Verde Properties.

43.    Notwithstanding that no investment was ever made, Ms. Wilkov had represented to Dr. Wilkov that such an investment had been made.

**Scott Avenue Development**

44.    In early 2005, Ms. Wilkov approached Dr. Wilkov about making additional investments with Zimbalist and Chanla.. Again, Jennifer Wilkov represented to Dr. Wilkov that Zimbalist and Chanla were purchasing and rehabilitating Los Angeles area real estate.  Again, that representation was false.

45.    This time, Ms. Wilkov solicited her father to invest in Scott Avenue Development, LLC ("Scott Avenue Development"), which she claimed Zimbalist and Chanla were going to use to purchase Los Angeles area properties.

46.    Based on Ms. Wilkov's representations, on or about March 2, 2005, Dr. Wilkov, acting on behalf of the Wilkov Family Limited Partnership, wired $500,000 to CPM Holdings, LLC, which was, upon information and belief, the entity which Zimbalist and Chanla used to receive funds to be used for the supposed investment by Scott Avenue Development in (1) 247 East Mountain Avenue, Pasadena, CA ("247 East Mountain Avenue"), (2) 634 Forest Avenue, Pasadena, CA ("634 Forest Avenue"), (3) 607 North Garfield Avenue, Pasadena, CA ("607 North Garfield Avenue") and (4) 4855 Orion Avenue, Los Angeles, CA ("4855 Orion Avenue").

47.     At or around the same time, Dr. Wilkov, acting on behalf of the Wilkov Family Limited Partnership, paid $125,000 to CPM Holdings, LLC, which was, upon information and belief, the entity which Zimbalist and Chanla used to receive funds to be used for the supposed investment by Scott Avenue Development in 162 South Lotus Avenue, Pasadena, CA ("162 South Lotus Avenue").

48.     On or around April 15, 2005, Zimbalist and Chanla sent Dr. Wilkov membership certificates memorializing the Wilkov Family Limited Partnership's investment in Scott Avenue Development relating to 247 East Mountain Avenue, 634 Forest Avenue, 607 North Garfield Avenue, 4855 Orion Avenue and 162 South Lotus Avenue.

49.     In late March 2005, Ms. Wilkov solicited Dr. Wilkov to make additional investments in Scott Avenue Development, which she again claimed Zimbalist and Chanla were going to use to purchase Los Angeles area properties. On March 29, 2005, as a follow-up to those discussions, Jennifer Wilkov sent Dr. Wilkov "deal sheets" which purported to show a proposed investment in Scott Avenue Development LLC by Dr. Wilkov for the purchase of property located at 1132 Stratford Avenue, South Pasadena, CA ("1132 Stratford Avenue").

50.     Based on Ms. Wilkov's representations, on or about April 19, 2005, Dr. Wilkov, acting on behalf of the Wilkov Family Limited Partnership, wired $200,000 to CPM Holdings, LLC, which was, upon information and belief, the entity which Zimbalist and Chanla used to receive funds to be used for the supposed investment by Scott Avenue Development in 1132 Stratford Avenue.

51.     On or around May 4, Zimbalist and Chanla sent Dr. Wilkov a membership certificate memorializing the Wilkov Family Limited Partnership's investment in Scott Avenue Development relating to 1132 Stratford Avenue.

52.     In late April 2005, Jennifer Wilkov solicited Dr. Wilkov to make additional investments in Scott Avenue Development, which she again claimed Zimbalist and Chanla were going to use to purchase Los Angeles area properties. On April 29, 2005, as a follow-up to those discussions, Jennifer Wilkov sent Dr. Wilkov "deal sheets" which purported to show a proposed investment in Scott Avenue Development LLC by Dr. Wilkov for the purchase of property located at 2646 Bronholly Drive, Los Angeles, CA ("2646 Bronholly Drive").

53.     Based on Ms. Wilkov's representations, on or about May 2, 2005, Dr. Wilkov, acting on behalf of the Wilkov Family Limited Partnership, wired $100,000 to CPM Holdings, LLC, which was, upon information and belief, the entity which Zimbalist and Chanla used to receive funds to be used for the supposed investment by Scott Avenue Development in 2646 Bronholly Drive.

54.     On or around July 11, 2005, Zimbalist and Chanla sent Dr. Wilkov a membership certificate memorializing the Wilkov Family Limited Partnership's investment in Scott Avenue Development relating to 2646 Bronholly Drive.

55.     In fact, Scott Avenue Development never purchased or otherwise invested in 247 East Mountain Avenue, 634 Forest Avenue, 607 North Garfield Avenue, 4855 Orion Avenue, 1132 Stratford Avenue or 2646 Bronholly Drive. Although Zimbalist and Chanla purchased 102 South Lotus Avenue, they did not make the mortgage payment and the property was foreclosed without disclosure to Plaintiffs.

56.     Notwithstanding that no investment was ever made, Jennifer Wilkov falsely represented to Dr. Wilkov that such an investment had been made.

**The Fraud Unravels**

57.    By 2006, Zimbalist and Chanla's victims began to inquire regarding the status of their investments.  Consequently, Zimbalist, and Chanla embarked on an additional fraud—causing Ms. Wilcov to falsely inform investors that properties, including the properties owned by Encino Verde Development and Scott Avenue Development in which Dr. Wilkov and the Wilkov Family Limited Partnership had invested.

58.    On August 30, 2006, Ms. Wilkov sent Dr. Wilkov a document entitled "Return of Investment & Profit," which purported to report the sale of 1132 Stratford Avenue. The Return of Investment & Profit reports stated that those 1132 Stratford Avenue had been sold for $1,289,500 and that Wilkov Family Limited Partnership's total payout on that investment was $359,676.30.

59.    On September 2, 2006, Ms. Wilkov sent Dr. Wilkov documents entitled "Return of Investment & Profit," which purported to report the sale of 4855 Orion Avenue, 247 East Mountain Avenue, 607 North Garfield Avenue, 634 Forest Avenue and 2646 Bronholly Drive.  The Return of Investment & Profit reports stated that those five properties had been sold for a total of $3,893,000 and that Wilkov Family Limited Partnership's total payout on those investments was $1,031,473.

60.    In fact, upon information and belief, Zimbalist and Chanla never made the investments or sales reflected in the Return of Investment & Profit reports.

61.    Further, Zimbalist, Chanla and Jennifer Wilkov provided the Return of Investment & Profit reports to investors, including Dr. Wilkov, knowing them to be false, with the intention of forestalling the discovery of their fraud and to allow Zimbalist and Chanla, both individually and acting on behalf of the Investment LLC Defendants, to spend or hide all of the

funds they had received from investors, including Plaintiffs, based on their false representations regarding the investments.

62.     Finally, in October 2006, Ms. Wilkov disclosed to investors, including Dr. Wilkov, that Zimbalist, Chanla and the Investment LLC Defendants would not be paying any of the promised returns to investors and, later, that it had all been a fraud which she claimed had been perpetrated by that Zimbalist, Chanla and the Investment LLC Defendants.

63.     To date, Defendants have returned none of the approximately $1,025,000 which Dr. Wilkov and the Wilkov Family Limited Partnership invested with Encino Verde Development and Scott Avenue Development.

**Finder's Fees**

64.     Zimbalist and Chanla  paid a "finder's fee" to Ms. Wilkov for each investor that she secured.

65.     Ms. Wilkov did not disclose this "finder's fee" arrangement to Plaintiffs prior to their investments in Encino Verde Development or Scott Avenue Development.

**The Deal Sheets**

66.     Ms. Wilkov provided Plaintiffs, in connection with soliciting their investments in Encino Verde Development and Scott Avenue Development, "deal sheets" and "cash flow worksheets" ("the Deal Sheets").

67.     The Deal Sheets purported to represent "sample investments."  They also purported to reflect the costs and projected returns on the investment.

68.     The Deal Sheets falsely represented that Encino Verde Development and Scott Avenue Development had or intended to purchase various parcels of real property in the Los Angeles area.

69.     The Deal Sheets did not include the "finder's fee" being paid to Jennifer Wilkov as a cost of the investment.

70.     The Deal Sheets did not explain or disclose how the projected return on investment was calculated, did not disclose reasonably anticipated costs and expenses, did not allow for reasonable contingencies, and did not disclose the tax consequences of the investments.

71.     The Deal Sheets did not explain or disclose any risks associated with the investment.

72.     The Deal Sheets did not disclose fees or commissions to Chanla and Zimbalist. Jennifer Wilkov, as a professional financial advisor, knew or should have known that the materials were not sufficient for a *bona fide* investment.

**The Criminal Proceedings**

73.     On June 27, 2007, the New York County District Attorney's Office indicted Zimbalist, Chanla and Ms. Wilkov for securities fraud and grand larceny in connection with this scheme. Zimbalist and Chanla were arrested in California and remained in custody.

74.     On March 10, 2008 and March 13, 2008, Zimbalist and Chanla pled guilty before Justice Bonnie Wittner of the Supreme Court State of New York, County of New York to participating in a Scheme to Defraud in violation of Penal Law section 190.65(1)(b) and violations of General Business Law sections 352-(c)(5) and (6). They were both sentenced to 1 ½ to four year incarceration.

75.     On June 22, 2008, Ms. Wilkov also pled guilty before Justice Wittner to participating in a Scheme to Defraud in violation of Penal Law section 190.65(1)(b) and violations of General Business Law sections 352-(c)(5) and (6). Ms. Wilcov was sentenced to four months.

76.    As part of her written plea allocution, Zimbalist stated:

[F]rom January of 2005 through May of 2006, Pam Chanla and I stole money [from] investors by making material omissions and misrepresentations in order to induce victims to purchase shares of residential real estate through our companies. The three companies that were involved in the fraud were CPM Holdings, PMC Interests, and Scott Avenue Development. We told the victims that if they invested with us, we would use their money to purchase and renovate nine residential properties. We told each victim that his or her money would be used for a specific property. We then gave the victims a signed "deal sheet" that indicated that the investor money was being used to purchase and renovate that specific property. Some victims gave us money for only one specific property, and some victims gave us money for several specified properties. When the victims gave us money for several properties, the victim would designate the exact amount of money that was supposed to be spent on each specific property, and we agreed to that. We also told the victims that each property would be maintained in a separate LLC for that property. We told the victims that we would' double their investment, and that the minimum investment was $25,000. We also misrepresented our past successes to the victims, telling the victims that we had fixed and flipped numerous properties in the past and always doubled our investors money.

**Jennifer Wilkov was our connection to the victims in this case. She worked for American Express Financial Advisors and convinced her clients to make these investments.** We paid Wilkov a fee for her referrals and for helping us communicate with the victims. We paid Wilkov a total of $142,000 directly from the victim money. We never disclosed to the victims that we were using their money to pay Wilkov, or to pay ourselves.

In reality, we only purchased two of the nine properties. We purchased 162 South Lotus Avenue in Pasadena and 295 Martelo Avenue in Pasadena. We started renovating the two properties but then did not keep up with the mortgage payments and the homes were foreclosed on in the spring of 2006. We never told the victims that the homes had been' foreclosed on. We told the victims that we had renovated the homes and that we had sold them, and promised the victims their money. But those were all lies, and we never paid the victims anything. Although we used some of the victim money for the purchase and renovation of these two homes, most of the victim money we used for ourselves and to pay off California victims that we had defrauded.

My brother, Michael Zimbalist, and his wife, Ellen Zimbalist, bought a third property, 3493 Greenwood Avenue, Los Angeles, because Pam and I had bad   credit. We never renovated 3493 Greenwood, and then we sold it for a profit. Pam and I shared the profits from this sale.  We never gave the victims money back from this property, nor from any of the other properties.  Instead, we used the victim money for ourselves and to pay off the California victims.

The other six properties we never owned at all. Again, we used the victim money for ourselves and to pay off the California victims. We never repaid any of the victims in this case.   Of the properties that we did buy, we didn't maintain them in separate LLC and we commingled all the victim money.

Although we never bought the bulk of the properties in this case, we told the victims that we had. We continued to deceive them through 2005 and 2006, claiming to be renovating the properties and putting them on the market for sale. We then told the victims that we had sold the properties and promised them they would be getting their money. But this was not true and we never gave the victims in this case any money back. We just kept stalling.

My main responsibility in this fraud was to communicate with the investors. Pam's main responsibility was to handle the paperwork. We both shared in the proceeds of the crimes. I renovated my own home Pam bought two homes, one for myself and one fro my parents. Pam and I lived a lavish lifestyle.  (emphasis added).

77.    Chanla made a similar allocution.

## II.    DAMAGES

78.    As a result of Defendants' fraudulent scheme, Plaintiffs have lost all of their approximately $1,025,000 investment in Encino Verde Development and Scott Avenue Development.

**Causes of Action.**

## AS AND FOR A FIRST CAUSE OF ACTION
(Against All Defendants for Common Law Fraud)

79.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

80.    Zimbalist and Chanla and their entities engaged in a scheme to defraud the Plaintiffs by selling to Plaintiffs and other investors worthless securities. They used Ms. Wilkov, primarily because of her lack of due diligence, to disseminate misstatements and non-disclosures about the investments and to procure the investors.

81.    Zimbalist and Chanla through Ms. Wilkov fraudulently induced Plaintiffs to make these investments by making material misrepresentations and omissions (as outlined above) regarding virtually every aspect of these investments.

82.    Zimbalist and Chanla caused Ms. Wilkov to make these misrepresentations and omissions with *scienter* — that is with the knowledge and/or reckless disregard for the truth of the statements that they made or caused to be made to Plaintiffs and with the intent that the Plaintiffs rely on those misrepresentations and omissions to their detriment.

83.    Ms. Wilkov through her own negligence and lack of diligence may not have intended to make misrepresentations or omissions, but was manipulated into doing so by Zimbalist and Chanla.

84.    In all events, Plaintiffs so relied on their representations and omissions to their detriment.

85.    Zimbalist, Chanla and Encino Verde Development, Scott Avenue Development, CPM Holdings and PMC Interests are liable for common law fraud in an amount to be determined at trial.

86.     In addition, if because of her guilty plea, Ms. Wilkov is considered to have intentionally participated in the common law fraud scheme, Defendant Ameriprise is derivatively and vicariously liable for her misconduct, and is thus jointly and severably liable for common law fraud, along with the other Defendants.

## AS AND FOR A SECOND CAUSE OF ACTION
(Against All Defendants For Breach of Express and/or Implied Contract)

87.     Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

88.     Plaintiffs entered into various agreements with Defendants Zimbalist and Chanla and their entities for the purchase of interests in the Los Angeles Properties.  The Plaintiffs fulfilled all of their material obligations under these agreements.  As set forth above, the Defendants materially breached their obligations with regard to these investments.

89.     As a result of these material breaches, Plaintiffs have been damaged in an amount of at least $1 million.

90.     In addition, Plaintiffs entered into one or more customer agreements and other agreements with Defendant Ameriprise.  Plaintiffs fulfilled each of their material obligations, but Ameriprise materially breached its agreements by, among other things, negligently supervising and training Ms. Wilkov.  Moreover, to the extent that Ameriprise is vicariously liable for common law or securities fraud, such misconduct will constitute a breach of the agreements.

91.     In addition, to the extent that not all of Ameriprises's obligations were memorialized in written agreements, Ameriprise certainly had implied contractual obligations to ascertain that its employee – Ms. Wilkov – was qualified to provide the advice and services that she was giving to Plaintiffs, and that she was actually providing adequate services and advice.

Ameriprise materially breached these obligations, which caused Plaintiffs damages in the amount of at least $1 million.

92.    Accordingly, all Defendants are liable to Plaintiffs for breach of express and implied contract in amounts to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
(Against All Defendants For Unjust Enrichment)

93.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

94.    Defendants Chanla and Zimbalist and their various entities received over $1 million from Plaintiffs for which they used for their own purposes and not as they promised. This money was never returned to Plaintiffs and these Defendants have been unjustly enriched.

95.    To the extent that Ameriprise charged Plaintiffs any commissions in connection with these investments, it was also unjustly enriched and should be forced to repay such commissions.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Against Ameriprise for Negligence and Negligent Supervision)

96.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

97.    Ameriprise breached their duty of care to Plaintiffs (who are Ameriprise customers) to ensure that Ms. Wilkov was adequately trained and supervised and that at all times she comported with the applicable standards of care in providing advice and services to Plaintiffs.

98.    Ameriprise breached these duties by failing to adequately supervise and train Ms. Wilkov to take other steps that would have prevented the losses described above.

99.    Plaintiffs were directly and proximately harmed as a result of this

negligence.

100.    In addition, to its own direct negligence, Ameriprise is liable vicariously for the negligence committed by Ms. Wilcov in the course of her duties as an Ameriprise employee and as the financial advisor and Registered Representative to Plaintiffs.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Against All Defendants for Federal Securities Fraud
and Other Violations of Federal Securities laws)

101.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

102.    Zimbalist and Chanla and their entities engaged in a scheme in violation of section 10(b) of the Exchange Act and Rule 10b-5 to sell to Plaintiffs and other investors worthless securities. They used Ms. Wilkov, primarily because of her lack of due diligence, to disseminate misstatements and non-disclosures about the investments and to procure the investors.

103.    The investments by Plaintiffs set forth above constituted the purchase and sale of securities within the meaning of Section 2(1) of the Securities Act, 15 U.S.C. 77(b)(l). and Section 3(a)(10) of the Exchange Act, 15 U.S.C. 78c(a)(10).

104.    Zimbalist and Chanla through Ms. Wilkov fraudulently induced Plaintiffs to purchase these securities by making material misrepresentations and omissions (as outlined above) regarding virtually every aspect of these investments.

105.    Zimbalist and Chanla caused Ms. Wilkov to make these misrepresentations and omissions with scienter – that is with the knowledge and/or reckless disregard for the truth of the statements that they made or caused to be made to Plaintiffs and with the intent that the Plaintiffs rely on those misrepresentations and omissions to their detriment.

106.    Ms. Wilkov through her own negligence and lack of due diligence may not have intended to make misrepresentations or omissions but was manipulated into doing so by Zimbalist and Chanla.

107.    In all events, Plaintiffs so relied on the misrepresentations and omissions to their detriment.

108.    Zimbalist, Chanla, Encino Verde Development, Scott Avenue Development, CPM Holdings and PMC Interests are liable for security fraud in an amount to be determined at trial.

109.    In addition, Ameriprise and Ms. Wilkov violated 15 U.S.C. 80b-6 by reason of Ms. Wilkov's assertions regarding the investments that were not based on fact and failing to engage in the proper due diligence, and by Ameriprises's failure to properly supervise and train Ms. Wilkov.

110.    Defendant Ameriprise is vicariously and derivatively liable under sections 10(b) and 80b-6 and Rule 10b-5 for Ms. Wilkov's conduct.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Against All Defendants for violations of consumer protection statutes)

111.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

112.    The conduct alleged above violated sections 349 and 350 of the New York General Business Law and analogous provisions of California, Florida and other states' consumer deception statutes that may apply.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants:

A.    On the First Cause of Action, for common law fraud, in an amount to be determined, but which currently exceeds $1 million, plus prejudgment interest and punitive

damages;

      B.      On the Second Cause of Action, for breach of express and/or implied contract, in an amount to be determined, but which currently exceeds $1 million, plus prejudgment interest;

      C.      On the Third Cause of Action, for unjust enrichment, in an amount to be determined, but which currently exceeds $1 million, plus prejudgment interest;

      D.      On the Fourth Cause of Action, for negligence and negligent supervision, in an amount to be determined, but which currently exceeds $1 million, plus prejudgment interest;

      E.      On the Fifth Cause of Action, for federal securities fraud and violations of the federal securities laws in an amount to be determined, but which currently exceeds $1 million, plus prejudgment interest;

      F.      On the Sixth Cause of Actions, for violations of the New York, California, Florida and any other applicable consumer fraud statutes in an amount to be determined, but which currently exceeds $1 million, plus prejudgment interest, plus punitive and enhanced damages and attorney's fees.

      G.      On All Causes of Action, such other and further relief, including the costs and disbursements and of this action, rescission and prejudgment interest, as to this Court seems just and proper.

Dated: New York, New York
       July 25, 2008

                              **SCHLAM STONE & DOLAN LLP**

                              By: _Andrew S. Harris_
                              Jeffrey M. Eilender
                              John M. Lundin
                              Andrew S. Harris
                              26 Broadway
                              New York, NY 10004
                              (212) 344-5400 (Telephone)
                              (212) 344-7677 (Facsimile)
                              *Attorneys for Plaintiffs Howard R. Wilkov, M.D.*
                              *and the Wilkov Family Limited Partnership*